# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

KENNETH MICHAEL WORKMAN
and RAY MARVIN NICHOLS,

      Plaintiffs,

      v.

HENRY ATENCIO, CORIZON
MEDICAL SERVICES, DR. MURRAY
YOUNG, and UNKNOWN AND
UNNAMED INDIVIDUALS OF THE
IDAHO DEPARTMENT OF
CORRECTIONS AND CORIZON
MEDICAL SERVICES,

      Defendants.

Case No. 1:16-cv-00309-BLW

MEMORANDUM DECISION AND
ORDER

## INTRODUCTION

The Court has before it Plaintiffs' Motion for Summary Judgment (Dkt. 29). For

the reasons discussed below, the Court grants the motion in part, and denies the

remainder without prejudice.

## BACKGROUND

Plaintiffs Kenneth Workman and Ray Nichols have both been diagnosed with

Hepatitis C and are each serving life sentences in the Idaho State Correctional Institute

(ICSI). *Compl.* ¶¶ 4-5, 9; Defendant Henry Atencio's Answer ("Atencio Ans.") ¶¶ 4-5, 9;

*Defendants Corizon Medical Services and Dr. Murray Young's Answer* ("Corizon Ans.")

¶¶ 4-5, 9. Each has a medical history indicating chronic care treatment. *Atencio Ans.* ¶ 9.

Plaintiffs each submitted grievance forms concerning their Hepatitis C condition.

*Atencio Ans.* ¶ 12. Workman submitted his on or around March 22, 2016, and Nichols

submitted his on or around May 24, 2016. *Id.* Workman's grievance reads as follows:

> The problem is:
> Corizon failure to provide me with a specific date when I am to be given
> the new treatment for Hep-C. I was told by Corizon M/S several years ago I
> would receive treatment when the new drugs became available and Corizon
> has not provided it.
> . . .
> I suggest the following solution for the problem:
> That I be treated for my chronic illness ASAP.

*Compl.* Ex. 1 at 1, Dkt. 5-1 ("Grievance Forms"). On the same day, he received the

following response:

> Treatment for Hep C is triaged using the Federal Bureau of Prison
> prioritization guidelines. There are four categories determined by labs,
> comorbidities, and liver biopsy. Category one is the highest priority for
> treatment based on your current labs and previous liver biopsy. You are not
> a candidate for category one at this time. Please submit and HSR to further
> discuss prioritization process / guidelines with a provider.

*Id.* Workman appealed this decision twice over the following month, each time

unsuccessfully. *Id.* at 2.

Nichols's grievance reads as follows:

> The problem is:
> I've been told for several years by Corizon medical staff at ISCI that when
> the new treatment for Hep-C (Harvoni) became available I would be
> treated. This has not happened. I specifically requested for a date I would
> start treatment to be cured of my disease and my request was not responded
> to. The refusal to provide date is the basis for this grievance.

. . .
I suggest the following solution for the problem:
To provide me with immediate treatment to cure me of my Hep-C disease.

*Id.* at 3. Two days later, he received the following response:

> Hepatitis C treatment is triaged based on the Federal Bureau of Prison
> Prioritization guidelines. Based on your most recent labs, you are currently
> a Priority 4 patient, which indicates the lowest need for treatment at this
> time. Priority 1 patients have the highest need, following by Priority 2 & 3
> patients. Your labs and biopsy from 2010 indicate that your hepatitis C is
> currently stable. We will continue to monitor and manage your care
> appropriately. Thank you.

*Id.* Like Workman, Nichols appealed this decision twice and was twice denied. *Id.* at 4.

Plaintiffs filed a pro se complaint in this Court on July 8, 2016 (Dkt. 1). Plaintiffs

seek declaratory and injunctive relief under 42 U.S.C. § 1983 for Defendants' violation of

the Eighth Amendment. Specifically, Plaintiffs allege that the named Defendants - Henry

Atencio, the IDOC Director; Corizon, LLC, which contracts with IDOC to provide

medical care to ICSI inmates; and Dr. Murray Young, the Corizon Regional Medical

Director from June 2013 to July 2016 – implemented a policy that was deliberately

indifferent to their needs for direct-acting antiviral drugs (DAA) to treat their Hepatitis C.

*Compl.* ¶ 1; *Corizon Ans.* ¶¶ 7-8; *Atencio Ans.* ¶ 6. Plaintiffs describe DAAs as a new

treatment that now constitute the standard of care for all individuals with Hepatitis C.

*Compl.* ¶ 1. Plaintiffs ask the Court to order Defendants "to formulate and implement a

Hepatitis C treatment policy and practice that meets the community standard of care" and

"to timely provide [Plaintiffs with] the most effective up-to-date medications for cure of

their disease." *Id.* ¶ 13.

Because not all named parties consented to the jurisdiction of a magistrate judge, on April 4, 2018, the case was reassigned from Chief U.S. Magistrate Judge Bush to Chief United States District Judge Winmill (Dkt. 32). On December 1, 2017, Plaintiffs moved for appointment of counsel (Dkt. 28). Then, on February 27, 2018, Plaintiffs moved for summary judgment (Dkt. 29). Their motion included one exhibit: the "Affidavit of Kim Frashier," IDOC's Business Support Manager. *Pl. Br.* Ex. A, Dkt. 29-5 ("Frashier Aff."). *See id.* Plaintiffs argue that the affidavit shows that Defendants impermissibly prioritize treatment for Hepatitis C-positive inmates for monetary reasons. *Pl. Br.* at 5, Dkt. 29-4.

Key points from the affidavit include: (1) due to a limited budget appropriation to treat Hepatitis C, Mr. Frashier's office and Corizon "began exploring ways to more efficiently provide Hepatitis C treatments to inmates," and eventually decided to follow Federal Bureau of Prisons (FBOP) Clinical Practice Guidelines for Hepatitis C, which state that "Although all patients with chronic HCV infection may benefit from treatment, certain cases are at higher risk for complications or disease progression and require more urgent consideration for treatment."'; (2) in June of 2016, Corizon provided to IDOC a master list of inmates with Hepatitis C, which separated the inmates into four Priority Levels (Level 1 being highest priority and Level 4 being the lowest), as provided in Guidelines; (3) the Priority Levels are "based on a variety of factors, such as the AST (aspattate [sic] aminotransferase) to Platelet Ration Index (APRI)"; (4) Frashier's office and Corizon developed a policy under which Corizon would only treat inmates that were

Priority Level 1 or 2; (5) Corizon's list documented a total of 524 inmates with Hepatitis C in the IDOC system: 22 Priority Level 1 inmates, 28 Priority Level 2 inmates, 21 Priority Level 3 inmates, and 453 Priority Level 4 inmates; (6) the FBOP updated the Guidelines in October of 2016 and again in May 2017; there are now only three Priority Levels, but Ms. Frashier saw no changes in the factors for them; (7) Ms. Frashier understands that Corizon is in the process of re-prioritizing inmates based on updated Guidelines; (8) for inmates that are treated, the most commonly used medications are Harvoni and Epclusa. *Frashier Aff.* at 2-6, Dkt. 29-5.

Defendants objected to Plaintiffs' use of the Frashier Affidavit because it was filed under seal in another pending lawsuit: *Balla v. Idaho State Board of Correction*, No. 1:81-cv-01165-BLW. *Id.* In their reply, Plaintiffs noted that Workman is a court appointed class representative for the plaintiffs in *Balla*, and submitted an exhibit showing that the parties in *Balla* asked the Court to unseal the affidavit on March 23, 2018. *Pl. Reply to Corizon* at 2, Ex. B ("Joint Stipulation to Unseal the Affidavit of Kim Frashier"), Dkt. 33 Therefore, Plaintiffs argued, because the affidavit is relevant, presented in good faith, and effectively unsealed, the Court should consider it. *See id.* at 2-3.

However, before making a decision regarding Defendants' objection, the Court unsealed the Frashier Affidavit on April 9, 2018, after reviewing the parties' joint stipulation to unseal the affidavit. *Balla*, No. 1:81-cv-01165-BLW, Dkt. 1245. Soon afterwards, on April 20, 2018, Plaintiffs in this case filed a Motion for Leave of the Court

for Plaintiffs to Supplement an Addendum to Pleadings (Dkt. 35). Around the same time, Plaintiffs filed a motion requesting the Court to reconsider the order reassigning the case from the magistrate judge to the district court judge (Dkt. 36).

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable

inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

**1.     Deliberate Indifference Under the Eighth Amendment**

The Eighth Amendment of the United States Constitution protects prisoners against cruel and unusual punishment while incarcerated. Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In the Ninth Circuit, the test for deliberate indifference consists of two parts. *Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006). First, the plaintiff must show a "serious

medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* at 1096. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. *Id.* at 1060. Additionally, a plaintiff must demonstrate that the prison official's actions were both an actual and proximate cause of their injuries. *See Conn v. City of Reno*, 591 F.3d 1081, 1098–1101 (9th Cir. 2010), vacated by 563 U.S. 915 (2011), reinstated in relevant part 658 F.3d 897 (9th Cir. 2011).

A. **Serious Medical Need**

The Ninth Circuit has identified three circumstances in which a medical need may be regarded as serious: "[1] [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; [2] the presence of a medical condition that significantly affects an individual's daily activities; [3] or the existence of chronic and substantial pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 113 (9th Cir. 1997). Here, Plaintiffs have shown that there is no genuine issue of material fact as to serious medical need based on the first circumstance, because they have shown that a reasonable doctor or patient would find their Hepatitis C to be worthy of treatment.

Defendants argue that Plaintiffs failed to establish a serious medical need because neither has offered sufficient supporting evidence. *See Corizon Resp.* at 12, Dkt. 30 ("Plaintiffs have no credible and admissible evidence, including no medical evidence and expert testimony, to support . . . there being a serious medical need."); *Atencio Resp.* at

12, Dkt. 31 ("Plaintiffs have not offered competent medical evidence to prove that either of them has a serious medical condition.")

However, it was unnecessary for Plaintiffs to obtain medical evidence or expert testimony in support of this element of their deliberate indifference claim because they have established that "a reasonable doctor or patient" would find their condition to be "important and worthy of comment or treatment." The responses to each of their grievances indicate that each had regularly scheduled chronic care appointments, and Plaintiff Nichols was assured, "We will continue to monitor and manage your care appropriately." *Grievance Forms* at 1-4, Dkt. 5-1.

Additionally, several courts have noted that Hepatitis C is a disease that can have dangerous and long-lasting consequences.[1] *See, e.g., Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1299 (N.D. Fla. 2017) (finding that chronic Hepatitis C constitutes a "serious medical need" because it causes "substantial risks of serious harm, including, but not

---

[1] Moreover, in analogous cases, courts have often quickly advanced past the "serious medical need" inquiry because the parties did not dispute that plaintiffs' Hepatitis C condition constituted a serious medical need. *See, e.g., Young v. Bresler*, No. CIV S-03-0951FCDJFMP, 2006 WL 2091927, at *8 (E.D. Cal. July 26, 2006), *report and recommendation adopted*, No. S 03 0951 FCD JFM P, 2006 WL 2666053 (E.D. Cal. Sept. 15, 2006) ("There is no dispute that plaintiff's HCV infection constituted a serious medical need."); *Martin v. Dewsnup*, No. 6:11-CV-06420-AC, 2015 WL 13730889, at *7 (D. Or. Dec. 30, 2015), *report and recommendation adopted*, No. 6:11-CV-06420-AC, 2016 WL 614429 (D. Or. Feb. 14, 2016) ("Defendants do not dispute HCV is a serious medical need . . . ."); *O'Neill v. Bannister*, No. 312CV00030LRHWGC, 2014 WL 12657752, at *4 (D. Nev. Jan. 6, 2014), *report and recommendation adopted*, No. 312CV00030LRHWGC, 2014 WL 12659951 (D. Nev. Mar. 3, 2014), *aff'd*, 599 F. App'x 771 (9th Cir. 2015) ("Defendants do not dispute that Plaintiff's hepatitis C constitutes a serious medical need."). While the decision of defendants in other cases not to dispute whether the plaintiffs had a serious medical need is not binding on the defendants in this case, the frequency with which defendants have done so in other cases supports Plaintiffs' argument that their condition constitutes a serious medical need.

limited to, bleeding from any site in the body, accumulation of fluid in the legs or abdomen, life-threatening infections, significant pain or discomfort, organ failure, liver cancer, and death"); *Roe v. Elyea*, 631 F.3d 843, 862 (7th Cir. 2011) (noting that "HCV infection is a serious medical condition that can lead to irreversible physical damage and even life-threatening situations"). Therefore, Plaintiffs have met their initial burden of demonstrating the absence of a genuine dispute as whether their condition constitutes a serious medical need. *See Devereaux*, 263 F.3d at 1076.

## B.    *Deliberate Indifference*

To bring a § 1983 claim against a governmental entity, or a private entity performing a government function, a plaintiff must show that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains.[2] *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). A plaintiff must satisfy four elements to establish municipal liability for a failure to protect an individual's constitutional rights: (1) the plaintiff possessed a constitutional right, of which he was deprived; (2) the municipality had a policy; (3) this municipal policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the municipal policy

---

[2] Plaintiffs bring their claims against Defendants Atencio and Murray in their official capacities only. *Compl.* ¶ 6, 8. Under § 1983, official capacity claims against municipal employees are treated as claims against the municipality itself. *Fields v. Moreno*, 599 F. App'x 300, 301 (9th Cir. 2015); *Monell*, 436 U.S. at 690, n. 55. Liability for deliberate indifference against a government entity is only available based on claims alleging unconstitutional policies that caused the plaintiff's harm, as described in this section. Therefore, the Court will not analyze whether Defendants Atencio and Murray are liable in their individual capacities, which would require showing that they "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

is a moving force behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, Plaintiffs' claim falters on the first element, because while they have shown that they had a serious medical need, they have not established the absence of a genuine issue of material fact as to whether they require treatment with DAAs as a result of that need. Therefore, they have not shown that Defendants were deliberately indifferent to their serious medical need, such that they were deprived of their constitutional right to adequate medical care.

First, Plaintiffs have not presented sufficient evidence of the applicable standard of care. In their complaint, Plaintiffs assert that the American Association for the Study of Liver Disease (AASLD) and the Infectious Disease Society of America (IDSA) issued a statement on June 29, 2015 that requires all Hepatitis C treatment providers to prescribe "non-Interferon Direct Acting Anti.Virals (DAA) (currently Harvoni or Viekira-Pak) to any patient presenting HCV positive, with recommended treatment to begin immediately at any level of infection, no matter how recent or low the level of infection." *Compl.* at 2. However, Plaintiffs have not submitted this statement into the record. They also state in one of their reply briefs that "simple review of the AASLD and IDSA standards through their web site will confirm what the plaintiffs are alleging." *Pl's Reply to Corizon* at 4, Dkt. 33. But courts "should not go outside the record to supply a fact that is an essential part of a party's case unless the fact is clearly beyond dispute." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1267 (9th Cir. 2001) (citing *Mayhue v. City of*

*Plantation*, 375 F.2d 447, 451 n.6 (5th Cir. 1967). If Plaintiffs want the Court to consider the AASLD guidelines, they should enter it into the record through the normal discovery process or obtain an expert, with proper notice to Defendants, who can testify about them.

Plaintiffs suggest that no such evidence is necessary because other federal courts have found that the proper standard of care for all individuals with Hepatitis C is the prescription of DAAs. *See, e.g.*, *Pl's Reply to Atencio* at 13, Dkt. 34 ("Prevailing standards of law as found in Jamal v. Wetzel (2017) and Hoffer v. Jones (2017) now bring strong support to plaintiffs claims before this court."). Both courts found that treatment with DAAs is the current standard of care for Hepatitis C patients: *Hoffer* as a finding of fact, and *Abu-Jamal* as a finding of fact and of law. *See Abu-Jamal v. Wetzel*, No. 3:16-CV-2000, 2017 WL 34700, at *4, *10 (M.D. Pa. Jan. 3, 2017), *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1125, 2017 WL 3123434 (3d Cir. Apr. 13, 2017), and *appeal dismissed sub nom. Abu-Jamal v. Sec'y PA Dept of Corr*, No. 17-1156, 2017 WL 3160959 (3d Cir. Apr. 14, 2017); *Hoffer v. Jones*, 290 F. Supp. 3d 1292, 1296 (N.D. Fla. 2017).

However, the Court cannot accept these findings of fact for their truth because "taking judicial notice of findings of fact from another case exceeds the limits of [Federal] Rule [of Evidence] 201." *Wyatt v. Terhune,* 315 F.3d 1108, 1114 (9th Cir. 2003) ("[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201."), *overruled on other grounds by Albino v. Baca,* 747 F.3d 1162 (9th Cir.

2014). Moreover, as a district court case from another circuit, *Abu-Jamal*'s finding of law is only persuasive, not binding. Because the Ninth Circuit has not definitely spoken on the issue of whether, and in what circumstances, DAAs constitute the constitutionally required standard of care for Hepatitis C patients, the Court finds that *Abu-Jamal*'s finding of law, without more, is insufficient to establish the standard of care for the purposes of Plaintiffs' motion for summary judgment.

Second, even if the standard of care is as Plaintiffs describe it, Plaintiffs have not presented sufficient evidence that their particular medical conditions warrant treatment with DAAs under that standard. Plaintiffs provided no medical records,[3] and they suggest

---

[3] Defendants make this point in their response briefs. *See Corizon Resp.* at 12, Dkt. 30; *Atencio Resp.* at 14, Dkt. 31. In reply, Plaintiffs state that the medical records are in Defendants' possession. *See Pl. Reply to Corizon* at 4, Dkt. 33. However, Plaintiffs could have requested the records through the discovery process. The Court notes, though, that Plaintiffs could have obtained at least some evidence in support of this and other aspects of their claim if Defendants had properly responded to their requests for admission. The Court agrees with Plaintiffs that Defendants' responses to their requests for admission were inadequate. *See Pl. Reply to Corizon* at 7, Dkt. 33; *Pl. Reply to Atencio* at 8, Dkt. 34. Rather than clearly admitting, denying, or clearly explaining why they lacked sufficient information after conducting a reasonable inquiry, as required by Federal Rule of Procedure 36(a), Defendants objected to almost every one of Plaintiffs' requests on the basis that they were vague and ambiguous. For example, Plaintiffs' first request for admission to Defendants Corizon and Young was: "Defendants Corizon and Young currently have a policy and practice in place that treats only prioritized offenders with Hep-C and the newest available drugs such as Harvoni, act. [sic] and both plaintiff Workman and Nichols are not receiving the latest cure for Hep-C based on the above named defendants have concluded that both Workman and Nichols are not prioritized for treatment." Defendants Corizon and Young responded: Corizon Defendants object to this request as "confusing, overbroad, vague and ambiguous as to 'currently,' 'treats,' 'prioritized offenders,' 'Hep-C,' 'newest available drugs,' 'ect.,' 'latest cure,' 'above named defendants,' 'not prioritized for treatment,' and not relevant to Plaintiffs' claims or is not proportional to the needs of this case. Subject to and without waiving said objections, deny." "When the purpose and significance of a request are reasonably clear, courts do not permit denials based on an overly-technical reading of the request." *AmeriPride Servs., Inc. v. Valley Indus. Servs., Inc.*, No. CIV 2:00-CV-0113-LKK, 2011 WL 1321873, at *3 (E.D. Cal. Apr. 1, 2011). The Court cautions Defendants that, regarding any future requests for admission, they should "admit to the fullest extent possible, and explain in detail why other portions of [the] request may not be admitted" or else the Court may deem the matters admitted pursuant to Ruel 36. *Marchand v. Mercy Medical Center*, 22 F.3d 933, 938 (1994).

that none are needed because the current standard of care for all Hepatitis C-positive individuals, regardless of any other factors like the stage of the disease. However, while recent decisions from other federal courts, like the ones cited by Plaintiffs, suggest that DAAs should be prescribed to almost all Hepatitis C-positive individuals, most note that there are some exceptions based on individuals' particular medical circumstances. For example, in *Fitch v. Blades*, this Court found that the plaintiff failed to state a claim for deliberate indifference because the defendant doctor had evaluated him for treatment with Harvoni, a DAA, but determined that the plaintiff was not a candidate for that treatment because "Plaintiff's condition at the time was stable." *Fitch v. Blades*, No. 115CV00162BLWCWD, 2016 WL 8118192, at *7 (D. Idaho Oct. 27, 2016), *report and recommendation adopted*, No. 115CV00162BLWCWD, 2017 WL 411203 (D. Idaho Jan. 30, 2017), *judgment entered*, No. 115CV00162BLWCWD, 2017 WL 411204 (D. Idaho Jan. 30, 2017). *See also, e.g.*, *Hoffer*, 290 F. Supp. 3d at 1296 ("Despite the high cost of DAAs, the present-day standard of care is to treat chronic-HCV patients with *DAAs as long as there are no contraindications or exceptional circumstances*. It is inappropriate to only treat those with advanced levels of fibrosis.") (emphasis added).

Here, there is no evidence that there are contraindications or exceptions circumstances that would make providing them with DAAs medically inadvisable, apart from the remark in the response to Plaintiff Nichols's grievance that his "labs and biopsy from 2010 indicate that [his] hepatitis C is currently stable." *Grievance Forms* at 3, Dkt. 5-1. In fact, the responses to Plaintiffs' grievances suggest that Plaintiffs were refused

DAAs because they had been placed into lower priority levels based on similar prioritization systems that several other federal courts have found to be likely unconstitutional *See, e.g.*, *Abu-Jamal*, 2017 WL 34700, at *9 (finding reasonable likelihood of success on deliberate indifference prong where defendant prison followed policy that prioritized DAA treatment based on non-medical reasons) based on FBOP Priority Criteria); *Hoffer,* 290 F. Supp. 3d at 1301 (same).

The shortage of evidence showing any medical justification for denying DAAs to Plaintiffs could have been fatal to Defendants, given that "a scintilla of evidence in support of the non-moving party's position is insufficient" to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 252. However, Plaintiffs' failure to present evidence of the standard of care, combined with Defendants' legitimate reason for not responding to the Frashier Affidavit on the merits, means that Plaintiffs failed to go "beyond the pleadings" to establish a genuine issue of material fact, as required to prevail on a summary judgment motion. *Celotex,* 477 U.S. at 324. Taking all reasonable inferences in favor of Defendants, as the Court must at this stage, it is possible that once Defendants respond on the merits, they will show that there was a legitimate medical reason for denying DAAs to Plaintiffs, such that Plaintiffs' claims merely constitute a "difference[] in judgment between an inmate and prison medical personnel" rather than a demonstration that the treatment (or lack thereof) that they received was "medically unacceptable under the circumstances" and "chosen in conscious disregard of an

excessive risk" to their health. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

Because the Court finds that Plaintiffs have not met their burden of establishing that there are no disputed issues of fact as to the second element of their deliberate indifference claim, it will not analyze the other elements at this stage. And Plaintiffs' motion for summary judgment will be denied.

### 3.   Plaintiffs' Motion for Leave of the Court for Plaintiffs to Supplement an Addendum to Pleadings

As discussed in the Background section above, on April 20, 2018, Plaintiffs filed a motion to supplement their pleadings (Dkt. 35), arguing that the Court's decision to unseal the Frashier Affidavit on April 9, 2018 rendered Defendants' objections to Plaintiffs' use of the affidavit moot. The Court agrees, because Plaintiffs have shown that the affidavit is relevant to their claims. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") Therefore, the Court will consider the Frashier Affidavit, and will not strike the affidavit as requested by Defendants. *See Corizon Br.* at 10, Dkt. 30; *Atencio Br.* at 13, Dkt. 31.

However, the Court understands that the status of admissibility of the Frashier Affidavit in this case was unclear at the time that Plaintiffs filed their motion for summary judgment, given that the Court had not yet issued its order granting the *Balla* parties' joint stipulation to unseal the affidavit. Additionally, Plaintiffs did not disclose

the affidavit before filing their motion for summary judgment, contrary to the requirement of the Court's Initial Review Order for all parties to provide each other with all relevant information within thirty days of the filing of an answer. *See Initial Review Order* at 6, Dkt. 11. (Defendants' answers were filed on June 19, 2017, but Plaintiffs did not file their motion for summary judgment until February 28, 2018.[4]) For that reason, the Court will allow Defendants to address the affidavit in later briefing if it becomes an issue. However, because the Court is denying Plaintiffs' motion for summary judgment, the issue it moot at this point.

### 4.      Plaintiffs' Motion for Leave of the Court for Appointment of Counsel

On December 1, 2017, Plaintiffs moved the Court to appoint counsel to assist them (Dkt. 28), arguing that "a new era is opening up for treatment and cure for prisoners with Hep-C who have been denied treatment for being non-prioritized and non-medical reasons" and that recent federal decisions—particularly *Abu-Jamal* and *Hoffer*—are sufficiently complex to warrant appointment of counsel. *Motion for Leave of the Court for Plaintiffs to Supplement an Addendum to Pleadings* at 2-3, Dkt. 28.

Though there is no automatic right to counsel in civil cases, courts may appoint counsel in extraordinary circumstances. *Wilborn v. Escalderon*, 789 F.2d 1328, 1330 (9th Cir. 1986). "A finding of exceptional circumstances requires an evaluation of both the

---

[4] The Court will not sanction Plaintiffs for this, as requested by Defendants Corizon and Young, given Plaintiffs' pro se status. *See Corizon Resp.* at 9, Dkt. 30; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) "A document filed *pro se* is to be liberally construed . . . ." (internal quotation marks omitted).

likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved. Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991) (internal quotation marks omitted).

Here, the Court understands that counsel for other inmates similarly situated at IDOC is in contact with Plaintiffs, and he may represent them. The Court will be setting and conducting scheduling conferences in those cases and in this one in the near future, and the Court will address this issue then. Therefore, at this point the Court will deny the motion without prejudice.

**5.      Plaintiffs' Motion for Leave of Court to File Objection to the Court's Order Re-Assigning Case to District Judge**

On April 18, 2018, Plaintiffs filed a motion (Dkt. 36) objecting to the reassignment of this case to Judge Winmill. *Motion for Leave of Court to File Objection to the Court's Order Re-Assigning Case to District Judge* at 1, Dkt. 36. Plaintiffs contend that "reassigning the case to another judge at such a crucial stage of the case" would be prejudicial to Plaintiffs' goal of obtaining "an expedited injunctive ruling." *Id.* Plaintiff Workman further argues that assigning the case to Judge Winmill would create a conflict of interest because Judge Winmill is the presiding judge in *Balla*, and since the Frashier Affidavit from *Balla* is incorporated as evidence in this case but contested by Defendants, "it would be improper and prejudicial for Judge Winmill to rule on the probative value of [the Frashier Affidavit]." *Id.* at 1-2. Additionally, Plaintiffs assert that reassigning the case is "premature" given that none of the Defendants raised objections to the case

proceeding with the magistrate judge, and note that the reassignment order did not cite to any applicable Federal Rule of Civil Procedure or federal statute. *Id.* at 2.

None of Plaintiffs' arguments warrant reconsideration of the reassignment order. Addressing the last arguments first, the Notice of Assignment to a United States Magistrate Judge and Consent Form (Dkt. 23), filed on May 25, 2017, explained that "[e]xercise of this jurisdiction by a United States Magistrate Judge is . . . permitted only if all parties file a written consent form." It also cited to Federal Rule of Civil Procedure 73, which states the same. *See* Fed. R. Civ. P. 73(a-b) ("When authorized under 28 U.S.C. § 636(c), a magistrate judge may, if all parties consent, conduct a civil action or proceeding . . . To signify their consent, the parties must jointly or separately file a statement consenting to the referral."). Thus, whether Defendants actively objected to the assignment of the case to a magistrate judge is irrelevant; the case could stay with the magistrate judge only if all parties filed the written consent form. Defendants did not, so Judge Bush properly reassigned the case. Moreover, the Court explained the conditions under which the case would be reassigned in the Notice of Assignment.

Second, overturning the reassignment order now that the Court has issued a preliminary decision on Plaintiffs' summary judgment motion would be prejudicial to both Plaintiffs and Defendants. This Court now has a firm grasp of the facts and issues involved and is equipped to consider Plaintiffs' claims.

Finally, allowing this case to remain with Judge Winmill would not create a conflict of interest. A judge should disqualify himself when he has "personal knowledge

of disputed evidentiary facts concerning the proceedings." 28 U.S.C. § 455(b)(1).

However, the Ninth Circuit has required recusal of district judges under this provision "only in cases where bias stems from 'extrajudicial source[s]' and 'not from a judge's conduct or rulings during the course of judicial proceedings.'" *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 999 (9th Cir. 2003) (citing *King v. United States Dist. Court,* 16 F.3d 992, 993 (9th Cir.1994)). Judge Winmill's knowledge of the Frashier Affidavit stems from the judicial proceeding in *Balla* rather than from any extrajudicial source.

## ORDER

**IT IS ORDERED:**

1.  Plaintiffs' Motion for Summary Judgment (Dkt. 29) is **GRANTED IN PART and DENIED in part.** To the extent it is denied, it is denied without prejudice.

2.  Defendants are ordered to disclose the information requested by Plaintiffs and file a new response to Plaintiffs' motion for summary judgment, as well as a cross-motion for summary judgment, if desired, within 60 days. Plaintiffs may also submit additional evidence and file a new motion for summary judgment within this time.

3.  Plaintiffs' Motion for Leave of the Court for Plaintiffs to Supplement an Addendum to Pleadings (Dkt. 35) is **GRANTED**.

4.  Plaintiffs' Motion for Leave of the Court for Appointment of Counsel (Dkt. 28) is **DENIED** without prejudice.

5. Plaintiffs' Motion for Leave of Court to File Objection to the Court's Order Re-Assigning Case to District Judge (Dkt. 36) is **DENIED**.

DATED: September 19, 2018

B. Lynn Winmill
Chief U.S. District Court Judge