UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PHILIP A. TURNEY, an individual; BILLY RAY BARTLETT, an individual; MICHAEL A. McCALL, an individual; and REUBEN J. CORTES, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>HENRY ATENCIO; RONA SEIGERT; JOHN G. MIGLIORI; MURRAY F. YOUNG; APRIL C. DAWSON; JOHN and JANE DOES A-Z; CORIZON, INC.; and IDAHO DEPARTMENT OF CORRECTION,<br><br>Defendants. | Case No. 1:18-cv-00001-BLW<br>　　　　　1:18-cv-00097-BLW<br>　　　　　1:18-cv-00099-BLW<br>　　　　　1:18-cv-00100-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## BACKGROUND

On January 3, 2018, five pro se prisoners in custody of the Idaho Department of Correction (IDOC)—Philip A. Turney, Billy Ray Bartlett, James S. Hendrickson,[1] Michael A. Hall, and Reuben J. Cortes (Plaintiffs)—filed a joint Complaint about inadequate prison medical treatment for their Hepatitis C conditions, seeking monetary and injunctive relief. (Dkt. 11.)

---

[1] Plaintiff Hendrickson is no longer pursuing his claims and has been terminated as a party.

**MEMORANDUM DECISION AND ORDER - 1**

In early 2018, the Court permitted Plaintiffs to proceed, but severed their individual claims into separate lawsuits because prison security policy generally prevents prisoners from possessing other prisoners' medical records (Dkts. 21, 23.) On August 13, 2018, Plaintiffs gave notice of their stipulation to consolidate their cases into one action through newly-retained attorneys Richard Hearn and John B. Inglestrom (collectively "Hearn") (Dkt. 47.) On September 19, 2018, the cases were consolidated. (Dkt. 50.)

The case that Plaintiffs seek to consolidate with this case is *Workman, et al. v. Atencio, et al.*, No. 1:16-CV-00309-BLW, which was filed on July 8, 2016, about two years before the *Turney* plaintiffs filed their pro se lawsuit. In *Workman*, prisoners Kenneth Workman and Ray Nichols sought Hepatitis C treatment. They alleged that—even though Hepatitis C can now be cured with a costly new drug, a non-interferon direct-action antiviral medication ("DAA")—IDOC/Corizon withholds that treatment from all but the prisoners with the most severe symptoms because of the financial cost. Workman and Nichols asserted that prison officials instead should treat all prisoners infected with Hepatitis C to cure them before their symptoms become severe. In their complaint, Workman and Nichols sought only injunctive and declaratory relief.

The parties in *Workman* agree that Workman recently has been treated and essentially cured of Hepatitis C. Workman asserts that the lack of past treatment caused permanent liver damage. Nichols has not been treated because his symptoms are not severe, but he would like to be cured before his symptoms worsen.

Attorney Hearn now represents Workman. Nichols proceeds pro se.

**MEMORANDUM DECISION AND ORDER - 2**

# MOTION TO CONSOLIDATE *WORKMAN* CASE

1. **Standard of Law**

Federal Rule of Civil Procedure 42(a) permits consolidation of actions that share "a common question of law or fact." To determine whether to exercise discretion to consolidate cases, a reviewing court "weighs the saving of time and effort consolidation would produce against any inconvenience, delay or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984). The court may consider factors such as disparate trial dates or different stages of discovery as weighing against consolidation of the cases. 9 Wright & Miller, *Federal Practice and Procedure* § 2383 (2006).

Consolidation may take the form of a court order to "(1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). In addition, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims."

2. **Discussion**

On October 4, 2018, counsel for all plaintiffs except Nichols filed a motion to consolidate the *Workman* and *Turney* cases. The *Workman* case is two years older than the *Turney* case, but the *Workman* case took an irregular course. Plaintiffs, rather than Defendants, first filed a pro se motion seeking summary judgment, but did so without adequate supporting evidence. Disclosure and discovery disputes existed at the time of the summary judgment filing, and disputes remain outstanding today even though the

Court previously ordered Defendants to supplement their disclosures.[2] Defendants have now filed for summary judgment on some claims, but the motion will not dispose of all claims in that case.

Thus, *Workman* is not procedurally much farther ahead than the *Turney* case. The *Turney* case needs a new comprehensive case management plan, given the parties' outstanding requests, which range from amendment to class action status to preliminary injunctive relief. Consolidation of these similar cases will serve judicial efficiency. An overarching case management plan regarding disclosure, discovery, and all other outstanding requests will reduce duplicative attorney time spent on tasks on both sides. In addition, the same expert witnesses and other evidence likely can be used in all the cases, reducing the attendant costs of litigation for the parties.

Finally, no party has shown that prejudice will occur because of consolidation. Nor has any party shown that inconveniences associated with consolidation will be greater than the benefits. The only difficulty is that one plaintiff remains pro se; however, the Rules of Civil Procedure provide the Court with authority to issue orders catering to the particular needs of the claims and cases within a consolidated action.

Accordingly, the Court has concluded that consolidation of these cases is appropriate. By separate order in the *Workman* case, the Court has ordered Plaintiff Nichols to clarify how he desires to proceed. If Nichols decides to proceed pro se, then the Court will determine whether his case will be handled differently within the

---

[2] Defendants report: "the Court's order does not specify which party or parties need to supplement and does not identify what specific information needs to be supplemented." (Dkt. 51, p. 4.)

**MEMORANDUM DECISION AND ORDER - 4**

consolidated case because of privacy, security, and case management concerns that arise in pro se cases.

Hereinafter, the *Workman* and *Turney* cases will be referred to as the *Turney* case.

## THE *BALLA* CLASS'S MOTION TO INTERVENE

1. **Standard of Law**

The *Balla* class asserts that it is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). The class must show that it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

The *Balla* class alternatively asserts that it qualifies for permissive joinder. Pursuant to Rule 24(b)(1)(B), the court may allow intervention by a party with a "claim or defense that shares with the main action a common question of law or fact." As the term itself implies, permissive intervention "is committed to the broad discretion of the district court." *See Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).

2. **Background**

*Balla v. Idaho*, Case No. 1:81-cv-01165-BLW, is a 37-year-old class action focusing on a single prison facility in the IDOC penal system, the Idaho State Correctional Institution (ISCI). In the mid-1980's, the Court ordered that IDOC take some very general, but discrete, steps at ISCI: adopt a special dietary program for medically infirm inmates; create 24-hour emergency medical care for inmates and hire a full-time physician; provide a properly-staffed medical delivery system; and establish a

**MEMORANDUM DECISION AND ORDER - 5**

psychiatric care program. When the injunctions were issued, the IDOC created a compliance plan. For a long time, the case lay dormant. When the IDOC sought to terminate the injunctions in 2003, the prisoners objected, and the Court determined that the injunctions should remain in place.

In 2012, the parties entered into a stipulated "Modified Compliance Plan" that included an agreement by IDOC to undertake changes and implement procedures that exceeded the requirements of the Eighth Amendment.[3] But, the parties also stipulated to a number of line actions that were intended to bring ISCI up to Eighth Amendment standards. However, missing from the stipulation was an agreement that the current ISCI operations violated the Eighth Amendment.[4]

In 2017, the Court held a hearing in *Balla* that revealed the Modified Compliance Plan had been poorly monitored by IDOC officials, IDOC attorneys, Plaintiffs' attorneys, and the prisoner class representatives. However, there are now indications that IDOC has performed its obligations under Modified Compliance Plan, and the Court has strongly encouraged counsel to bring *Balla* to as rapid a conclusion as possible. In any event, it seems that the *Balla* Modified Compliance Plan has reached the end of, and perhaps

---

[3] For example, in 2012, Dr. Mark Stern reported his opinion that no Eighth Amendment violations existed in this area in his 2012 report, but the IDOC agreed to address some areas related to diet. (See Dkt. 822 in *Balla*.) The IDOC's obligations under the Modified Compliance Plan are contractually enforceable, even if they are not specifically required by the Eighth Amendment.

[4] This anomaly alone is enough for the Court to deny the intervenors' motions because of anticipated overcomplication and delay that would occur in resolving such an issue rather than beginning anew to examine current Hepatitis C treatment in light of current Eighth Amendment legal standards.

**MEMORANDUM DECISION AND ORDER - 6**

exceeded, its natural life. The *Balla* Defendants have indicated that they are going to file a motion to terminate the injunctions no later than the end of February 2019.

3. Discussion

For the reasons that follow, the Court has decided to deny the *Balla* class's request to intervene in this action.

### A. *No Showing that the Interests of the Class Members are Not Adequately Represented*

An example of a "class within a class" case where the interests of members of a first class were *not* adequately represented in the second class is *Arthur v. Sallie Mae, Inc.*, No. C10-0198JLR, 2011 WL 13127651 (W.D. Wash. June 6, 2011). There, the court permitted Ms. Harper, a class representative in a first class action to intervene in a second class action, because she showed that her interests were not adequately represented in the second action:

> Ms. Harper filed a similar putative class action as the instant one in the Northern District of Illinois against her loan provider Arrow Financial for violation of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. § 227. Ms. Harper now asks this court to either stay the class action filed before it as to the Arrow Financial class members, or permit her to intervene as a party plaintiff in this action. In the class action before this court, class counsel attempts to settle all claims against Arrow Financial for violation of the TCPA, which would include Ms. Harper's claims, *despite not having a class representative whose loans were serviced by Arrow Financial*. Moreover, the record before the court indicates that Arrow Financial class members, who appear also to be primarily "charge-off" class members, are limited in their recovery to prospective relief, while the remaining class members are not so limited. Whether the "charge-off" class members were adequately represented during the settlement negotiations is a question that this court must

> address before approving the settlement in this case.
> Accordingly, the court deems it appropriate to have a class
> representative from this particular group before the final
> approval hearing and therefore approves Ms. Harper's request
> for intervention.

*Id.* at *1.

Unlike Ms. Harper, the *Balla* plaintiffs have not shown how their substantive interests are different from all other prisoners' interests and how they would not be adequately represented. The *Balla* class—which consists of all prisoners at ISCI—has no lesser or greater rights than other diagnosed or undiagnosed IDOC prisoners to have constitutionally-adequate treatment for Hepatitis C. Whether the *Turney* cases proceed as a set of individual cases or a new prisoner class action, the result of *Turney* is that IDOC/Corizon's policy will be tested, clarified, and changed (if necessary) to meet Eighth Amendment standards regarding Hepatitis C diagnosis and treatment for all prisoners. The *Balla* class members' interests are the same as the *Turney* plaintiffs' interests.

### B. *Hepatitis C Issues Will Best be Addressed in a Narrowly-Focused Action*

*Balla* is substantively broad, whereas *Turney* is substantively narrow. The *Balla* class is a narrow representation of the entire prison population, whereas *Turney* can be crafted into a case that is representative of all IDOC prisoners' interests, no matter where those prisoners are housed. As to substance, the only original *Balla* injunction that seems to intersect with the Hepatitis C issues is the order to provide a "properly-staffed medical delivery system." This injunction is not so specific that it must be interpreted to include the fine points of new Hepatitis C treatments that were not even conceivable at the time

**MEMORANDUM DECISION AND ORDER - 8**

of the original injunctions. The remainder of the injunctions currently at issue in *Balla* are not relevant to the claims in this case. Because only part of one of the injunctions in *Balla* has any relevance to the issues in *Turney*, and because Hepatitis C relief is better addressed in a case that focuses only on Hepatitis C diagnosis and treatment, the Court concludes that inserting *Balla* in to *Turney* would unnecessarily complicate and delay *Turney* without any benefit to the IDOC prisoners.

### C. *Inserting Balla into Turney Would be a Procedural Morass*

Another factor the Court has considered is the unwieldly nature of inserting a 37-year-old class action that focuses on more than four different broad subjects, each involving up to hundreds of subtopics, into a two-year-old action that focuses on recent developments in Hepatitis C treatment. In addition, the Court has not determined that this consolidated action will be converted into a class action. That decision will be preceded by status conferences and other case management procedures to determine the scope and nature of the named *Turney* plaintiffs' claims and those of the proposed individual intervenors introduced by *Turney* plaintiffs.

### D. *Merging pre-PLRA Injunctions with post-PLRA Injunctions is Contrary to the PLRA's Purposes*

The IDOC has indicated that it plans to file for termination of the *Balla* injunctions no later than February 2019. Trying to insert the 37-year-old pre-PLRA-injunction *Balla* case into a new post-PLRA action will not allow the *Balla* plaintiffs to bypass new court scrutiny of the old injunction as it relates to Hepatitis C diagnosis and treatment. The *Balla* plaintiffs cannot viably argue that they are *entitled* to have a pre-PLRA injunction

**MEMORANDUM DECISION AND ORDER - 9**

enforced in a post-PLRA case on res judicata grounds. Neither can they argue that litigation of the Hepatitis C issue in this new case will cause them to lose ground gained in *Balla*. Rather, in both *Balla* and *Turney*, the PLRA prevents *any* injunction from being perpetuated or newly issued unless current constitutional violations exist. The Court concludes that intervention of the *Balla* plaintiffs and the attendant pre-PLRA injunctions would unnecessarily complicate and delay this new and narrow action.

### E. *There Should Not be an Over-Emphasis on ISCI in this Action*

The *Balla* class asserts that, under the current policy, IDOC prisoners with Hepatitis C generally receive their treatment for that disease at ISCI, and, therefore, ISCI should be front and center in *Turney*. However, the *Turney* plaintiffs do not reside at ISCI, nor do the individual prisoners who seek to become part of a focused Hepatitis C consolidated or class action lawsuit. The Court does not see the benefit of overlaying ISCI-related issues from an agreement that stipulated to certain remedies but did not stipulate that the conditions actually violated the Eighth Amendment onto a case that will be focused solely on Eighth Amendment issues in the entire prison system—whether in a class action or in individual cases brought by plaintiffs residing at different prisons.

### F. *The Turney Counsel and the Court are Capable of Addressing the IDOC Hepatitis C Issues without Intervention of the Balla Class*

The *Balla* class argues that "the *Turney* and *Workman* plaintiffs lack the ability or need to argue the applicability of the MCPs to the Hep C issue." (Dkt. 60-1, p. 8.) The Court rejects the *Balla* class's suggestion that the *Turney* Plaintiffs' counsel (who is both a physician and an attorney) cannot, on his own and with the help of his co-counsel,

obtain relevant evidence from the *Balla* parties and determine how to use it effectively and efficiently in this action—whether as evidence of notice, knowledge, or otherwise. The Court has confidence that Plaintiffs' current attorneys are capable of analyzing any overlapping concerns of the two cases and seeking appropriate relief that will work to the benefit of all prisoners (whether by using a class action vehicle or prompting a policy change in individual cases that will benefit all prisoners).

The Court also rejects the *Balla* class's argument that the Court is incapable of creating a class (or managing a set of consolidated individual cases) that encompasses the needs of all inmates who either have Hepatitis C when they enter the IDOC system or who contract the disease within the IDOC system. The *Balla* class asserts, "Even if the *Turney* and *Workman* plaintiffs move to certify a class of all IDOC inmates, the nature and contours of that class will most likely be limited, whereas the *Balla* class concerns all inmates housed at ISCI without respect to medical diagnosis." The Court believes the opposite is true—inserting a general class action related only to ISCI into a very specific action whose outcome will benefit all prisoners likely would cause *Turney* to lose its focus on Hepatitis C treatment for all prisoners (whether at risk of cruel and unusual punishment because of unconstitutional diagnosis *or* treatment) at all facilities.

### G. *Duplicative Litigation is not a Concern*

The Court does not agree that there is a high potential for duplicative litigation or inconsistent outcomes between *Balla* and *Turney*, because this Court presides over both cases. The Court has a duty to the public to manage its docket wisely. The Court is convinced that keeping these litigations that are so different in procedural posture and

**MEMORANDUM DECISION AND ORDER - 11**

overall subject matter separate is the best case management strategy for avoidance of duplication in both of these actions.

4. **Conclusion**

Based on the foregoing, the Court will deny the *Balla* plaintiffs' Motion to Intervene. The Court concludes that they do not qualify for either mandatory or permissive intervention, based on the particular characteristics of *Balla* and *Turney* and the limited judicial resources of the United States District Court for the District of Idaho.

5. **Case Management Conference**

Also pending before the Court are various motions and disclosure/discovery issues that need immediate attention. The Court will require counsel for the parties to meet in person with the staff attorney in this case during the week of January 22, 2019, to formulate an overall case management plan for the consolidated cases. An additional order on the conference date and time and required preparations will be forthcoming.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Consolidate Cases (Dkt. 53) is GRANTED to the extent specified herein above.
2. The *Balla* class's Motion to Intervene (Dkt. 60) is DENIED.
3. All pending Motions for Extension of Time (Dkt. 66, 83, 88) are GRANTED to the following extent. Nothing further shall be filed in this case until the parties attend the case management conference.

4. Within 24 hours after entry of this Order, counsel for Plaintiffs and Defendants shall contact Jaime Bracke with their availability for a two-hour case management conference on January 22, 23, 24, or 25, 2019. The Court will select a mutually available date and time and provide a list of discussion items for counsel to prepare for the conference. Mr. Nichols is not required to contact Ms. Bracke, and he will be included in the case management conference via telephone.

DATED: January 17, 2019

B. Lynn Winmill
U.S. District Court Judge